**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0339n.06
Filed: June 16, 2008

**No. 07-3105**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| EDDIE R. TAYLOR, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GIBBONS and SUTTON, Circuit Judges; and ACKERMAN, District Judge.[*]

SUTTON, Circuit Judge. Eddie Taylor contends that he did not knowingly, intelligently and voluntarily waive his rights to a trial when he pleaded guilty to four counts of bank robbery. Because the trial court adequately informed Taylor of the consequences of his guilty plea and because he manifested no signs of incomprehension, we affirm.

I.

Between November 18, 2005, and February 9, 2006, Taylor embarked on a bank-robbery spree, holding up six banks and stealing over $9,500. Each heist followed a similar script: Taylor approached a service window and passed the teller a note along these lines, "This is a robbery. Put

---

[*] The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

50's and 100's in [an] envelope. If you pull the alarm I will shoot you." JA 30. The government charged Taylor with six counts of unarmed bank robbery (for five completed robberies and one attempted robbery), *see* 18 U.S.C. § 2113(a), and Taylor agreed to plead guilty to four counts as well as to waive his right to appeal the conviction and sentence in exchange for the government's agreement to dismiss two counts.

After an extensive plea colloquy, the presiding magistrate issued a report and recommendation finding Taylor competent, stating that Taylor was advised of each of his rights and concluding that Taylor's "plea was knowing, intelligent, and voluntary, and that all requirements imposed by the United States Constitution and Fed. R. Crim. P. 11 have been satisfied." JA 17–18. The report informed Taylor that any objections "must be filed . . . within ten (10) days" and that a failure to object "waives the right to appeal the District Court's order." JA 19. Taylor did not object, and the district court accepted the magistrate's recommendations. The court sentenced Taylor to 188 months' imprisonment (at the top of the advisory guidelines range), after which Taylor filed this appeal, challenging the validity of his guilty plea.

II.

As an initial matter, it is fair to ask whether Taylor may pursue this appeal given that he waived his right to appeal his conviction and sentence. Normally, he would have no problem pursuing *this* kind of appeal: While an appeal waiver may prevent a defendant from raising many appellate arguments, it generally does not prevent him from challenging the validity of the

underlying waiver itself. *See In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) ("[I]t would be entirely circular for the government to argue that the defendant has waived his right to an appeal . . . when the substance of his claim challenges the very validity of the waiver itself."); *see also United States v. Webb*, 403 F.3d 373, 378 n.1 (6th Cir. 2005) ("This waiver of Webb's right to appeal is valid, however, only if his guilty plea was knowing, voluntary, and intelligent. Therefore, Webb may challenge on appeal the validity of his guilty plea by alleging that the district court improperly conducted a Rule 11 hearing.").

But this case has an additional wrinkle. Litigants who fail to object to a magistrate's report and recommendation, within the time provided, generally waive their right to challenge the magistrate's decision. *See United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). And in this instance, Taylor never objected to the magistrate's conclusion that his waiver was knowing, intelligent and voluntary, let alone raised this objection within the ten days provided. The Supreme Court has sanctioned this procedural rule, *see Thomas v. Arn*, 474 U.S. 140, 147 (1986), and we have applied it to criminal cases, *see, e.g.*, *United States v. Campbell*, 261 F.3d 628, 631–32 (6th Cir. 2001) (holding that the defendant waived the right to challenge a suppression ruling on appeal).

What we have not yet done, however, is hold that *Walters* bars an appeal challenging the validity of a guilty plea. In two unpublished opinions, we seemed to assume that *Walters* waivers do not apply in this setting, *see Lombardo v. Parker*, No. 92-3212, 1992 WL 236883, at *1 (6th Cir. Sept. 24, 1992) (per curiam); *Saffold v. Bowers*, No. 87-01048, 1991 WL 227753, at *1 (6th Cir. Nov. 6, 1991), and that may well be right: Ten days may not suffice to alert an otherwise

incompetent or unknowing defendant to the involuntary or unknowing nature of his plea. We need

not resolve the issue today, however, because the *Walters* rule is not jurisdictional, *see Souter v.

Jones*, 395 F.3d 577, 585 (6th Cir. 2005), and because the merits of Taylor's claim offer a more

straightforward way for resolving this case.

A guilty plea is valid only if the defendant knowingly, intelligently and voluntarily waives

the many constitutional rights associated with a criminal trial, *see Boykin v. Alabama*, 395 U.S. 238,

243 (1969), and has "sufficient awareness of the relevant circumstances and likely consequences"

of the plea, *Brady v. United States*, 397 U.S. 742, 748 (1970). The district court did not err in

accepting this guilty plea for several reasons. *First*, the signed plea agreement acknowledges that

Taylor was advised of his constitutional rights, "including the right to a trial by jury or by the Court,

the right to confront and cross-examine witnesses against him, the right to call witnesses [on] his

behalf, the right to be represented by an attorney at trial, and his privilege against self-incrimination."

JA 22. In signing the agreement, Taylor "acknowledge[d] that he ha[d] read this Plea Agreement,

that he . . . had an opportunity to discuss it with his attorney, that he fully underst[ood] the

Agreement," JA 30, and that he "specifically and voluntarily waive[d] [the enumerated] rights and

privileges," JA 22.

*Second*, the magistrate ensured that Taylor understood these rights at the plea hearing. He

asked Taylor:

> Do you understand that you have an absolute right to stand upon those previously-
> tendered pleas [of not guilty], and that if you do so, you would be entitled to a trial,

either before a jury or before Judge Economus; that at that trial you would be entitled to representation by counsel, Mr. Thompson; that . . . it would be [the government's] burden to prove your guilt beyond a reasonable doubt by calling witnesses, presenting other physical evidence; that your counsel would have the right to confront and cross-examine any witnesses the Government might present, challenge any physical evidence they might offer; that you would have the right to call witnesses on your own behalf, and that at that trial you would have either the right to testify in your own defense or stand upon your . . . Fifth Amendment privilege against self incrimination[?]

JA 45. In response, Taylor answered, "Yes." *Id.*

The magistrate twice more asked Taylor if he "underst[ood]" that he had those rights and that by pleading guilty he would "be waiving all of those rights," to which Taylor twice more responded, "Yes." JA 45–46. Taylor confirmed that he had "carefully reviewed each . . . page[] of the plea agreement," JA 46, he acknowledged his estimated guidelines range and he recognized that he was "waiving any right of review other than to challenge" an outside-guidelines sentence, JA 49. At the end of the hearing, the magistrate asked Taylor whether anything prevented his plea from being "a freely, intelligently, voluntarily-made choice," and Taylor said, "No." JA 50–51.

*Third*, at the plea hearing the magistrate separately confirmed that Taylor's attorney was comfortable with the guilty plea. The attorney agreed that the plea was "free of any constitutional defect." JA 51. And he added that he was "satisfied" with the court's compliance with Rule 11's requirements, *id.*, which are extra-constitutional in nature, *see United States v. Timmreck*, 441 U.S. 780, 783 (1979), and which, when satisfied, generally confirm that a plea "should not be set aside," *United States v. Gardner*, 417 F.3d 541, 544 (6th Cir. 2005).

In challenging the validity of the plea, Taylor points to two alleged deficiencies in the plea colloquy—the magistrate's failure to advise him of his right to compulsory process and the magistrate's failure to explain that, if he chose to assert his Fifth Amendment right not to testify, that choice could not be used against him at trial. As a general matter, we have held that due process "does not require separate enumeration of each right waived," *Fontaine v. United States*, 526 F.2d 514, 516 (6th Cir. 1975), and we have found guilty-plea waivers knowing and voluntary where the colloquy was far less thorough, *see, e.g.*, *United States v. Stead*, 746 F.2d 355, 357 (6th Cir. 1984) (upholding a guilty plea where the judge did not mention the defendant's confrontation rights or his right to be free from compelled self-incrimination). Even if the magistrate's reference to Taylor's "right to *call* witnesses on [his] own behalf," JA 45 (emphasis added), amounts to a technical violation of Rule 11, which requires courts to advise defendants of their right "to *compel* the attendance of witnesses," Fed. R. Crim. P. 11 (emphasis added), moreover, that miscue does not undo the validity of the plea, *see Fruchtman v. Kenton*, 531 F.2d 946, 948 (9th Cir. 1976) (upholding a guilty plea as valid under the Constitution and an older version of Rule 11 where the defendant was not informed of his rights to compulsory process or confrontation). And Taylor offers no authority for the proposition that a judge *must* explain that the Fifth Amendment prohibits adverse inferences drawn from a defendant's silence, and we can find none.

Taylor next points out that, at sentencing, a forensic psychologist diagnosed him as a "low-functioning, borderline mentally retarded individual" struggling with mental illness—testimony offered not for the purpose of questioning the plea but for the purpose of seeking leniency. Leaving

aside the question whether this psychologist's report could establish that the district court erred by accepting Taylor's plea when he did not receive the report until the sentencing hearing (long after the plea had been accepted), Taylor's claim still falls short. In the face of Taylor's own assertion that his plea was "a freely, intelligently, voluntarily-made choice" and his attorney's affirmative agreement that Taylor's plea was "free of any constitutional defect," JA 50–51, the record's lone (sentencing) reference to Taylor's mental difficulties cannot show that he did not understand the rights he was waiving, *see Fautenberry v. Mitchell*, 515 F.3d 614, 637 (6th Cir. 2008) ("[N]one of the psychological evidence indicates that [the defendant] was mentally incapable of understanding, appreciating, and waiving his constitutional rights . . . .").

*Boykin* does not change matters. In that case, "the judge asked no questions of petitioner concerning his plea, [the] petitioner did not address the court" at all, 395 U.S. at 239, and the Court simply held that it was "error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary," *id.* at 242. That is a distant cry from today's case, where the court repeatedly advised Taylor of his rights and Taylor repeatedly insisted that he understood them. On this record, the district court did not err in accepting the plea.

To the extent Taylor separately means to argue that the plea violated Rule 11 and must be invalidated on that ground alone, that too is wrong. Even if the magistrate's minor deviation from the Rule 11 script amounted to "error," Taylor has not even attempted to show "a reasonable

probability that, but for the error, he would not have entered the plea." *United States v. Dominguez*

*Benitez*, 542 U.S. 74, 83 (2004).

III.

For these reasons, we affirm.